IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

MISSISSIPPI BULK TRANSPORT, INC.     PLAINTIFF

VS.     No. 2:04CV220-D-A

UNION PLANTERS BANK, N.A.     DEFENDANT

OPINION GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

Presently before the Court is Defendant's motion for partial summary judgment. Upon due consideration, the Court finds the motion should be granted.

*A. Factual Background*

The Plaintiff, a Mississippi corporation, is involved in the freight transportation business and is a trucking transport broker. From May 1, 2002, through December 1, 2003, one of Plaintiff's employees, Amy Jaco, was allegedly involved in an embezzlement scheme whereby she misappropriated more than seventy company checks, totaling some $111,209.09, and deposited those checks into her personal banking account. Ms. Jaco deposited these checks into her personal account at Defendant Union Planters Bank by indorsing the checks "for deposit only" and put her bank account on each check.

On July 23, 2004, the Plaintiff filed this suit in the Circuit Court of Bolivar County, Mississippi. Plaintiff alleged that Defendant allowed Ms. Jaco to deposit the misappropriated checks into her personal banking account, and subsequently withdraw the funds, despite the fact that the checks were made payable to a fictitious trucking company and not herself. Plaintiff seeks recovery of the funds and punitive damages based on the following causes of action: (1) the "fictitious payee" statute of Mississippi's Uniform Commercial Code ("UCC"), Miss. Code Ann. § 75-3-404; (2) common law conversion; and (3) "transfer of stolen property."

The Defendant removed the case to this Court citing diversity jurisdiction under 28 U.S.C. § 1332. This Court issued an opinion and order denying Plaintiff's motion to remand on January 18, 2005. The Defendant now moves for partial summary judgment on Plaintiff's claims of common law conversion and "transfer of stolen property." Defendant argues that the UCC bars a claim of conversion by an issuer of an instrument. The Defendant also argues that "transfer of stolen property" is not an express cause of action in Mississippi. In addition, Defendant moves for summary judgment stating that Plaintiff is barred from recovering punitive damages. Defendant argues that the UCC does not provide for punitive damages and that the conduct complained of does not arise to the level enumerated in Mississippi's punitive damages statute. The Plaintiff did not respond to Defendant's motion.

### B. *Standard of Review*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) (the burden on the moving party may be discharged by 'showing...that there is an absence of evidence to support the non-moving party's case" Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trail.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. At 2553, 91 L. Ed. 2d At 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. At 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. V. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 536, 552 (1986).

*C. Applicable Law*

Federal Courts sitting in diversity must apply state substantive law. See Krieser v. Hobbs, 166 F.3d 736, 739 (5th Cir. 1999). "The core of what has become known as the 'Erie Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law." Hanley v. Forrester, 903 F.2d 1030, 1020 (5th Cir. 1990) (*citing* Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938). When deciding an unsettled issue of state law, this Court must consider how the Mississippi Supreme Court has, or would interpret the question. See Batts v. Tow-Motor Forklift Co., 978 F.2d 1386, 1389 (5th Cir. 1992) (*citing* American Waste & Pollution Control Co. V. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir.1991). When a Court must make an Erie guess, it is not the Court's role to create of modify state law, but rather only to predict it. Id.

*D. Discussion*

1.  Plaintiff's Conversion Claim

Commercial transactions in Mississippi are governed by the Uniform Commercial Code as adopted by the Mississippi Legislature. See Hancock Bank v. Ensenat, 819 So. 2d 3, 8 (Miss. 2001). "This Code shall be liberally construed and applied to promote its underlying purposes

and policies." Miss. Code Ann. § 75-1-102(1) (Supp. 2001). The purposes and policies of the UCC are: (1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continual expansion of commercial practice through custom, usage and agreement of the parties; and (3) to make uniform the law among the various jurisdictions." Miss. Code Ann. § 75-1-102(2) (Supp. 2001). The UCC governs negotiable instruments. Miss. Code Ann. § 75-3-102 (Supp. 2001). A "negotiable instrument" is "an unconditional promise or order to pay a fixed amount of money, with or without interest... if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money..." Miss. Code Ann. § 75-3-104(a)(1)-(3) (Supp. 2001). The checks in connection with this action are definitely negotiable instruments and therefore, this action is under the UCC.

The law of conversion for personal property also governs instruments. Miss. Code Ann. § 75-3-420(a). However, an action for conversion cannot be maintained by (1) the issuer or acceptor of the instrument, or (2) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee. Id. The Plaintiff in this action was the issuer of the instrument. Therefore, the Plaintiff cannot bring an action for conversion. In addition, the Plaintiff already has an adequate remedy against the Defendant for recreated of its account for unauthorized payment of the checks. Miss. Code Ann. § 75-3-420 CMT. Thus, the Court finds that the Plaintiff's claim for conversion fails as a matter of law.

2. Plaintiff's Transfer of Stolen Property Claim

The Plaintiff's claim for "transfer of stolen property" represents a challenge for the court. In a survey of Mississippi law, an express cause of action entitled "transfer of stolen property"

does not exist.  In fact, the Court surveyed both state and federal cases and found only one case that mentions "transfer of stolen property."  See Heisenberg v. Grand Bank For Savings, FSB, 70 Fed. Appx. 765, 769 (5th Cir. 2003).  The Fifth Circuit mentioned that the Mississippi cases addressing the concept of transfer of stolen property dealt with automobiles and other goods that are identifiable by title.  Id.  Heisenberg dealt with a stockbroker who transferred funds to a second client.  The Fifth Circuit stated that the second client could not retain the wrongfully transferred funds because it would be unjust enrichment.  Id. at 770.  The Fifth Circuit did state that the second client did have a cause of action for accounting against the stockbroker.  Id.  That case also dealt with the concept that a "thief has neither title nor power to convey title or property right to stolen property."  See Allstate Ins. Co. v. Est, 345 So. 2d 265, 266 (Miss. 1977).  That concept requires the Plaintiff to be the owner of the stolen property.

A check represents an obligation of the issuer rather than property of an issuer.  Miss. Code Ann. § 75-3-420 cmt.  The issuer has an adequate remedy against the payer bank for recredit on the issuer's account for unauthorized payment of a check.  Id.  Here, the Plaintiff is the issuer of its checks.  Therefore, according to the UCC comment, the check represented mere obligations of the Plaintiff and not its property.  Therefore, if the checks were not the Plaintiff's property, then the Plaintiff has no cause of action for stolen property.

Thus, the Court finds that because Mississippi does not recognize an express cause of action for "transfer of stolen property" and the checks represented mere obligations, the Plaintiff's claim fails as a matter of law.  The Court further notes that even if such a claim existed, the Plaintiff would not be entitled to further damages, and the Court finds that Plaintiff's first claim adequately covers the amount of possible recoverable damages.

3.  Punitive Damages

Thus, Plaintiff's remaining claim is the fictitious payee claim, which is governed by the UCC.  See Miss. Code Ann. §75-3-404(b)(ii)(d) (1972).  Since that claim is governed by the UCC, punitive damages are normally not allowed.  Miss. Code Ann. § 75-1-106 (1972).  "The remedies provided by this code shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed, but neither consequential or special or penal damages may be had except as specifically provided in this code or by other rule of law."  Miss. Code. Ann. § 75-1-106(1) (1972).  The comment to the UCC states that damages were not intended to include consequential or penal damages, and that the Act makes it clear that the measure of damages should be limited.  Miss. Code Ann. § 75-1-106 CMT.  The fictitious payee statute states that "the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss."  Miss. Code Ann.§ 75-3-404(d) (1972).  Thus, the standard of care described is that of ordinary negligence and not a higher standard.  The statute does not promote the use of penal or punitive damages.  Thus, if the Plaintiff seeks punitive damages, it must look to other law outside of the UCC.

The Mississippi statute for punitive damages is Miss. Code Ann. § 11-1-65.  That statute provides that punitive damages may not be awarded unless the plaintiff can prove by clear and convincing evidence that the defendant acted with actual malice, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, or actual fraud.  Miss. Code Ann. § 11-1-65(1)(a) (Supp. 2002).  "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits."  Community Bank, Ellisville, Mississippi v. Courtney, 884 So. 2d 767, 777 (Miss. 2004); Life & Cas. Ins. Co. of Tenn. v. Bristow, 529 So. 2d 620, 622 (Miss. 1998).  "The Court shall

determine whether the issue of punitive damages may be submitted to the trier of fact; and if so, the trier of fact shall determine whether to award punitive damages and in what amount." Miss. Code Ann. § 11-1-65(1)(d) (Supp. 2002). Trial judges have the authority to initially determine whether the particular facts of a case merit the submission of the issue of punitive damages to the trier of fact. Courtney, 884 So. 2d at 777; Alpha Gulf Coast, Inc. v. Jackson, 801 So. 2d 709, 733 (Miss. 2001).

Here, the Plaintiff here does not meet the high burden for punitive damages in Mississippi. Union Planters did not act with actual malice, gross negligence, nor commit actual fraud. Therefore, the Court finds that punitive damages would not be proper in this case and the Court will not submit the issue of punitive damages to the trier of fact.

*E. Conclusion*

In review, the Court finds that Plaintiff's claims for transfer of stolen property and conversion do not create an issue of genuine material fact and fail as a matter of law. Thus, the Defendant is entitled to a judgment as a matter of law on those two claims. In addition, the UCC does not favor punitive damages, and the allegations in this case do not meet the burden set by the Mississippi Supreme Court. Thus, this Court will not allow a claim for punitive damages to go forward to the trier of fact in this case.

A separate order in accordance with this opinion shall issue this day.

This the 29th day of November 2005.

/s/ Glen H. Davidson
Chief Judge